# Exhibit 1

**12-Person Jury**

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
CHANCERY DIVISION

FILED
12/7/2022 3:03 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2022CH11832
Calendar, 12
20587412

FILED DATE: 12/7/2022 3:03 PM   2022CH11832

| | |
|---|---|
| OLENA HALIM, individually and on behalf of all those similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>CHARLOTTE TILBURY BEAUTY INC., ISLESTARR HOLDINGS LTD.<br><br>    Defendant. | 2022CH11832<br>No. _____<br><br>**Judge:**<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

NOW COMES Plaintiff Olena Halim ("Plaintiff"), who brings this Class Action Complaint individually and on behalf of all others similarly situated, against Charlotte Tilbury Beauty Inc., ("Charlotte Tilbury") and Islestarr Holdings Ltd. ("Islestarr", together with Charlotte Tilbury, the "Defendants"), pursuant to the Illinois Biometric Information Privacy Act, 740 ILCS 14/1, *et seq.* (the "BIPA"). Defendants have violated BIPA through their undisclosed and unconsented capture, collection, dissemination, profiting from, and use of Plaintiff and the Class members' biometric identifiers and biometric information via the "Charlotte's Virtual Try On" tool on their website. Plaintiff seeks to enforce the statutorily protected privacy rights that Plaintiff and other Illinois residents have in their biometric identifiers and biometric information and to recover from Defendants for their repeated and continuing violations of BIPA.

## PARTIES, JURISDICTION, AND VENUE

1.      Plaintiff resides in Chicago, Illinois, and has resided there at all relevant times.

2.      Defendant Charlotte Tilbury is a Delaware corporation with its principal place of business in New York, New York. Charlotte Tilbury is a makeup and cosmetic company that markets

and sells branded cosmetic products, including but not limited to, the Charlotte Tilbury lipstick, mascara, eyeliner, and blush. It sells products on the Charlotte Tilbury U.S. website (www.charlottetilbury.com/us), including into the state of Illinois, and at dedicated counters at stores such as Sephora and Nordstrom located in Illinois. It employs retail makeup artists, counter managers, sales associates, among others, in Illinois. It also recruits and employs Area Trainers in Chicago, Illinois. Area Trainers are responsible for educating and training field and retail employees, leading on-boarding, seasonal trainings, new launch trainings, retail account trainings, in-store development, and special events, and for managing company assets and expenses. During the relevant period, Charlotte Tilbury's Director of Field Education and Pro Artistry was also based in Chicago, Illinois.

3.     Defendant Islestarr is a United Kingdom private limited corporation with its principal place of business in London, United Kingdom. It is the parent company of Charlotte Tilbury, holds the trademark to Makeup AI™, the technology that powers "Charlotte's Virtual Try On," and the copyright for the Charlotte Tilbury website.

4.     Upon information and belief, Defendant Islestarr also owns the Makeup AI™ technology and, together with Charlotte Tilbury, directs, operates, and manages Charlotte Tilbury's consumer-facing website, including "Charlotte's Virtual Try On," and Charlotte Tilbury's sales activities in Illinois.

5.     Jurisdiction is proper in this Court because Plaintiff is a citizen of Illinois and Defendants purposefully availed themselves of the laws, protections, and advantages of Illinois by conducting business in the State with consumers such as Plaintiff. Defendants use their website, including "Charlotte's Virtual Try On," together with their stores and employees, as part of their cosmetics marketing and sales strategy to purposefully avail themselves of the Illinois cosmetics market.

6.      Venue is proper in this Court pursuant to 735 ILCS 5/2-101 because the transactions or some part thereof out of which this cause of action arose occurred in Cook County.

## FACTUAL ALLEGATIONS

**A.  BIPA Requires Companies to Provide Notice and Obtain the Informed, Written Consent of Illinois Residents Prior to Capturing, Collecting, Using, or Storing their Biometric Data**

7.      Every person has unique features by which they can be identified using a set of standard quantitative measurements, referred to as "biometric identifiers." For example, the shape of and distance between tiny ridges on each person's finger are unique, so measurements of those features can be used to identify a specific individual.

8.      Each person also has a unique facial geometry composed of, among other measures, distances between key facial landmarks and ratios between those distances. Once a picture of a person's face is scanned and its biometric measurements are captured, computers can store that information and use it to identify that individual any other time that person's face appears on the internet or in public. Biometrics are used for everything from airport security screening to an alternative to passwords for accessing websites and phone applications, including banking and investment applications.

9.      In 2008, Illinois recognized that

> [b]iometric identifiers and biometric information are unlike other unique identifiers used to access finances or other sensitive information. For example, social security numbers, when compromised, can be changed. Biometric identifiers and biometric information, however, are biologically unique to the individual; therefore, once compromised, the individual has no recourse . . .

740 ILCS § 14/5.

10.      To provide special protections for this information, Illinois enacted BIPA, codified at 740 ILCS 14/1-25, which recognizes that "[t]he public welfare, security, and safety will be served

3

by regulating the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and biometric information." 740 ILCS § 14/5(g).

11.     The Illinois Supreme Court has recognized that BIPA was enacted to preserve an individual's right to privacy and control over his/her/their biometric data:

> Through the Act, our General Assembly has codified that individuals possess a right to privacy in and control over their biometric identifiers and biometric information. . . . .The duties imposed on private entities by section 15 of the Act regarding the collection, retention, disclosure, and destruction of a person's or customer's biometric identifiers or biometric information define the contours of that statutory right. Accordingly, when a private entity fails to comply with one of section 15's requirements, that violation constitutes an invasion, impairment, or denial of the statutory rights of any person or customer whose biometric identifier or biometric information is subject to the breach.
>
> * * *
>
> The Act vests in individuals and customers the right to control their biometric information by requiring notice before collection and giving them the power to say no by withholding consent. . . . When a private entity fails to adhere to the statutory procedures, as defendants are alleged to have done here, the right of the individual to maintain his or her biometric privacy vanishes into thin air. The precise harm the Illinois legislature sought to prevent is then realized. This is no mere "technicality." The injury is real and significant.

*Rosenbach v. Six Flags Ent. Corp.*, 129 N.E.3d 1197, 1206 (Ill. 2019) (internal citations and quotations omitted).

12.     BIPA defines a "biometric identifier" as a "retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry." 740 ILCS § 14/10.

13.     The statute defines "biometric information" as "any information, regardless of how it is captured, converted, stored, or shared, based on an individual's biometric identifier used to identify an individual."

14.     BIPA prohibits the collection of such information without prior express written informed consent:

4

FILED DATE: 12/7/2022 3:03 PM   2022CH11832

No private entity may collect, capture, purchase receive through trade, or otherwise obtain a person's or a customer's biometric identifier or biometric information, unless it first:

>   (1)      informs the subject or the subject's legally authorized representative in writing that a biometric identifier or biometric information is being collected or stored;

>   (2)      informs the subject or the subject's legally authorized representative in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and

>   (3)      receives a written release executed by the subject of the biometric identifier or biometric information or the subject's legally authorized representative.

740 ILCS § 14/15(b).

15.     BIPA also requires that private entities possessing such information develop special written policies establishing specific retention guidelines and make these policies available to the public:

>   A private entity in possession of biometric identifiers or biometric information must develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first.

740 ILCS § 14/15(a).

16.     Even if a private entity first obtains this information with informed consent and provides the required written policy, BIPA in turn limits the further disclosure or redisclosure of this information without express consent. 740 ILCS § 14/15(d).

17.     Separate from the disclosure and consent requirements, BIPA prohibits any sale, trade, or profiting from this specially protected information irrespective of any informed consent:

>   No private entity in possession of a biometric identifier or biometric information may sell, lease, trade, or otherwise profit from a person's or a customer's biometric identifier or biometric information.

5

740 ILCS § 14/15(c).

18.     BIPA gives any person aggrieved by a BIPA violation a private right of action, with liquidated damages for each violation. 740 ILCS § 14/20.

19.     BIPA provides for statutory damages of $1,000 for each negligent violation and, alternatively, damages of $5,000 for each willful and/or reckless violation of BIPA. *Id*. at § 14/20(1), (2).

20.     BIPA allows a prevailing party to recover their reasonable attorney's fees and costs. *Id.* at § 14/20(3).

21.     BIPA further provides, among other things, for injunctive relief, "as the State or federal court may deem appropriate." *Id.* at § 14/20(4).

**B.   Defendants Capture, Collect, Use, and Store the Facial Biometric Data of Plaintiff and Class Members Without Notice and Informed Written Consent**

22.     Defendants invite consumers to virtually try on Charlotte Tilbury cosmetic products such as lipstick, mascara, eyeliner, and blush via the "Charlotte's Virtual Try On" tool on the Charlotte Tilbury website located at https://www.charlottetilbury.com and in select stores. Consumers are also able to purchase cosmetic products on the website.

23.     To provide virtual try-ons, Defendants utilize Makeup AI™, a sophisticated and precise facial recognition technology, described by Charlotte Tilbury's parent entity, Islestarr, in its trademark application, as "facial recognition software" that is "for use in the collection of facial recognition data for cosmetics."[1]

---

[1] *See* Exhibit A, United States Patent and Trademark Office Search, Makeup AI™.

24.     When consumers view a product for which Charlotte's Virtual Try On tool is available, Defendants invite them to access Charlotte's Virtual Try On tool through a hyperlink entitled "TRY IT ON ME," accompanied by a camera icon.

25.     Below is a true and correct screenshot from the Charlotte Tilbury webpage showing how the tool appears to consumers; however, a red arrow has been superimposed on the image to direct the Court to the relevant portion of the image.



26.     When clicking on the "TRY IT ON ME" link, consumers receive a pop-up that says, "WELCOME TO CHARLOTTE'S VIRTUAL TRY ON" which gives "TOP TIPS FOR BEST RESULTS," directing consumers to "remove any face covering or glasses," "stand facing a bright light or window" and "remove all makeup." It provides consumers with a button at the bottom to allow camera access, labeled "ALLOW CAMERA ACCESS."

27.     Below is a true and correct screenshot from Charlotte Tilbury's webpage showing

how the pop-up appears to consumers:

FILED DATE: 12/7/2022 3:03 PM    2022CH11832



28.     When consumers click "ALLOW CAMERA ACCESS," Defendants use the consumer's camera to take a live scan of their face, with the selected product depicted on a live camera image of their face at the relevant location, with the facial scan allowing the customer to accurately try-on, for example, different shades of lipstick, including while moving their facial image on the camera.

29.     Consumers are also presented with tabs under the "Charlotte's Virtual Try On" tool, either to "VIEW FULL DETAILS" of the selected product, or "ADD TO BAG" and proceed to purchase.

30.     Charlotte's Virtual Try On operates by capturing the facial geometry of consumers including Plaintiff and Class Members.

31.     Makeup AI™, which powers "Charlotte's Virtual Try On," works by extracting and creating a unique digital representation of the face and its measurements (*i.e.,* a face template) based on the scan of the consumer's facial landmarks and facial geometry, including the contours of, and

distance between, unique facial landmarks and features. These facial geometry scans are used to identify the shape and features of the user's face to accurately overlay the virtual makeup product onto the consumer's facial image, even enabling the depicted product to remain accurately situated even while the consumer moves their face on the camera. In other words, the scan of the consumer's unique facial geometry and the face template is necessary for Makeup AI™ to overlay the product on the live image of the consumer's face with precision and exactitude. Each face template is unique to an individual and can be used to identify them.

32.     In direct violation of BIPA, 740 ILCS § 14/15(b)(1), Defendants never informed or disclosed to Plaintiff and Class members that it was capturing, collecting, and storing their biometric identifiers and biometric information.

33.     In direct violation of BIPA, 740 ILCS § 14/15(b)(2), Defendants never informed Plaintiff and the Class members of the specific purpose and length of time for which Defendants were collecting, storing, and using their biometric identifiers and biometric information.

34.     In direct violation of BIPA, 740 ILCS § 14/15(b)(3), Defendants never obtained a written release executed by Plaintiff and Class members prior to collecting, capturing, storing, and using their biometric identifiers or biometric information.

35.     Defendants' violations of BIPA injured Plaintiff and Class members, who lost the power and ability to make informed choices about Defendants' collection, storage, and use of their highly sensitive biometric identifiers and/or biometric information.

**C.    Defendants Failed to Develop and Publish Policies for the Retention and Permanent Destruction of Plaintiff and Class Members' Biometric Data**

36.     BIPA also requires Defendants, as entities "in possession of biometric identifiers or biometric information" to "develop a written policy, made available to the public" that establishes "a retention schedule and guidelines for permanently destroying biometric identifiers and biometric

information when the initial purpose has been satisfied or within 3 years of the individual's last interaction with private entity, whichever occurs first." 740 ILCS § 14/15(a).

37.     Defendants failed to develop a written policy, made available to the public, that establishes a retention schedule and guidelines for permanently destroying the biometric identifiers and/or biometric information of Plaintiff and Class members.

**D.** **Defendants Disclose and Profit from Plaintiff and Class Members' Biometric Data Without Obtaining Their Informed Consent.**

38.     Upon information and belief, Defendants, possessing Plaintiff and the Class members' biometric identifiers and biometric information, also commercially disclose, transfer, and disseminate Plaintiff and Class members' biometric identifiers and/or biometric information directly to Defendants' affiliates and third-party partners, including affiliates and partners that provide technical and other services for its Makeup AI™ technology, without consent and for Defendants' benefit.

39.     While the facts of this dissemination are peculiarly within the Defendants' possession, in 2021, Defendants notified their California consumers that in the preceding 12 months they collected and shared their California consumers' biometric information with other companies within the Charlotte Tilbury Group, which includes companies in the UK, Canada, the Netherlands, Germany, France, Spain, Italy and Hong Kong.

40.     Defendants have also stated that they may share personal information with vendors, service providers, third parties, and other companies within the Charlotte Tilbury Group, including for the purpose of data analysis, product and service development, business development, and information technology and analytic services.

41.     Defendants, never having disclosed their ongoing collection of the biometric identifiers and/or biometric information of Illinois customers in the first instance, failed to obtain consent to transfer, disclose, redisclose, or disseminate this information.

42.     This conduct violated, and continues to violate, BIPA's prohibition on the disclosure, redisclosure, or dissemination of biometric information and biometric identifiers without express consent. *See* 740 ILCS § 14/15(d).

43.     Upon information and belief, Defendants also commercially benefit from their commercial disclosure and dissemination of Plaintiff and the Class member's protected biometric data because this commercial dissemination assists Defendants with business development, data analytics and consumer advertising. In doing so, Defendants violated BIPA's prohibition on the sale, trade, or profiting from Plaintiff and Class members' biometric information and biometric identifiers. *See* 740 ILCS § 14/15(c).

### E.  Plaintiff's Personal Experience

44.     On multiple occasions beginning in or about December 2020 and continuing through October 2022, Plaintiff Olena Halim, while located in Illinois, visited the Charlotte Tilbury website, and used "Charlotte's Virtual Try On" tool to see how Charlotte Tilbury's cosmetic products would look if applied on her face. She virtually tried-on Charlotte Tilbury's lipstick, lip liner, eye shadow, highlighter, and various other cosmetic products.

45.     To proceed with "Charlotte's Virtual Try On," Defendants required Plaintiff to turn on and use her live camera in Illinois at which point the technology used her live camera to scan, collect, capture, obtain, use, and store digital copies of Plaintiff's unique facial geometry scan.

46.     Prior to taking Plaintiff's biometric identifiers and/or biometric information, Defendants did not inform Plaintiff in writing, or otherwise, that her biometrics were being captured, collected, stored, used, obtained, or disseminated. Defendants did not seek, and Plaintiff was never

11

provided, informed written consent relating to the collection, capture, use, storage, dissemination, or

disclosure of her biometric identifiers and/or biometric information. Nor did Defendants publish any

policy specifically about the collection, retention, use, deletion, or dissemination of such information.

In fact, Defendants did not publish any policy as to a biometric retention schedule or guidelines for

permanently destroying biometrics.

47.     By failing to comply with BIPA, Defendants violated Plaintiff's substantive state

rights to biometric information privacy. As a result, Defendants injured Plaintiff by depriving her of

the power and ability to make informed decisions about the collection, storage, and use of her

biometric information and biometric identifiers.

## CLASS ALLEGATIONS

48.     Plaintiff brings this action on behalf of herself and a class of similarly situated

individuals pursuant to 735 ILCS § 5/2-801. Plaintiff seeks to represent a Class as defined as follows:

> All individuals whose biometric identifiers and/or biometric
> information were captured, collected, obtained, stored, used, disclosed,
> redisclosed, disseminated, sold, traded, or profited from by Defendants
> through "Charlotte's Virtual Try On" tool within the state of Illinois
> any time within the applicable limitations period.

49.     Excluded from the Class are any members of the judiciary assigned to preside over

this matter; any officer or director of Defendants; and any immediate family member of such officer

or director.

50.     Numerosity: Upon information and belief, there are more than forty class members

and individual joinder in this case is impracticable. The exact number of members of the Class is

known by Defendants and can be easily identified through Defendant's records

51.     Commonality and Predominance: There are many questions of law and fact common

to the claims of Plaintiff and the Class, and those questions predominate over any questions that may

FILED DATE: 12/7/2022 3:03 PM   2022CH11832

affect individual members of the Class. Common questions for the Class include, but are not limited to, the following:

    a. Whether Defendants collected, captured, received otherwise obtained, stored and/or used biometric identifiers and biometric information from Plaintiff and the members of the Class;

    b. Whether Defendants first informed Plaintiff and the members of the Class in writing that they would be collecting, capturing, receiving, otherwise obtaining, storing, and/or using their biometric identifiers or biometric information;

    c. Whether Defendants first informed Plaintiff and the members of the Class in writing of the specific purpose and length of term for which their biometric identifiers or biometric information would be collected, captured, received, otherwise obtained, stored, and/or used;

    d. Whether Defendants first obtained from Plaintiff and the members of the Class a written release before capturing, collecting, or otherwise obtaining their biometric information and biometric identifiers;

    e. Whether Defendants established a publicly available policy for retention of biometric identifiers and biometric information sufficient to satisfy 740 ILCS § 14/15(c).

    f. Whether Defendants disclosed, redisclosed, or disseminated the biometric identifiers and biometric information of Plaintiff and the members of the Class;

    g. Whether Defendants obtained the consent of Plaintiff and the members of the Class to disclose, redisclose, or disseminate their biometric information and biometric identifiers;

    h. Whether Defendants traded, sold, leased, or otherwise profited from its possession of the biometric identifiers and biometric information of Plaintiff and the members of the Class;

    i. Whether Defendants' conduct violates BIPA;

    j. Whether Defendants' conduct is negligent;

    k. Whether Defendants' violations of BIPA are willful or reckless; and

    l. Whether Plaintiff and the Class are entitled to damages and injunctive relief.

    52.    Adequacy of Representation: Plaintiff will fairly and adequately represent and protect the interests of the other members of the Class she seeks to represent. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions. Plaintiff and her

13

counsel are committed to vigorously prosecuting this action on behalf of the other members of the Class and have the financial resources to do so. Neither Plaintiff nor her counsel has any interest adverse to those of the other members of the Class.

53.     Appropriateness: A class action is an appropriate method for the fair and efficient adjudication of the controversy because it will resolve multiple issues common to the Class in a single stroke. Absent a class action, most members of the Class would find the cost of litigating their claims to be prohibitively expensive and would thus have no effective remedy. The class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants and promotes consistency and efficiency of adjudication.

54.     Defendants have acted and failed to act on grounds generally applicable to the Plaintiff and the other members of the Class, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and making injunctive or corresponding declaratory relief appropriate for the Class as a whole.

55.     Individual litigation also risks inconsistent or contradictory judgments and increases the costs of legal resolution of this matter for all parties and the court system. By contrast, the proposed class action presents far fewer management difficulties and offers the benefits of single adjudication, economies of scale, and comprehensive supervision by this Court.

### <u>COUNT I</u>
**Violations of the Illinois Biometric Information Privacy Act,**
**740 ILCS 14/15(a)**
**(On behalf of Plaintiff and the Class)**

56.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

57.     Defendants are private entities as defined in 740 ILCS § 14/10.

58.     740 ILCS § 14/15(a) requires Defendants to "develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric

identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first."

59.     In violation of 740 ILCS § 14/15(a), Defendants, while in possession of Plaintiff's and the Class members' biometric identifiers and biometric information, failed to develop a written policy made available to the public providing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information as required by that provision.

60.     BIPA provides for statutory damages of $5,000 for each willful and/or reckless violation of BIPA and, alternatively, damages of $1,000 for each negligent violation of BIPA.

61.     Defendants' violations, as set forth herein, were knowing and willful, or were at least in reckless disregard of the statutory requirements. Alternatively, Defendants negligently failed to comply with BIPA's requirements because they failed meet their applicable standard of care to ensure that such information was collected, stored, and used in compliance with applicable State law.

62.     Accordingly, Plaintiff, on behalf of herself and the proposed Class, seeks: (i) injunctive and equitable relief as provided for in 740 ILCS § 14/20(4) to protect Plaintiff and the Class members' interests by requiring Defendants to comply with 740 ILCS § 14/15(a)'s requirements and restraining Defendants' continued non-compliance; (ii) statutory damages of $5,000 pursuant to 740 ILCS § 14/20(2) for each intentional and reckless violation of BIPA, or alternatively statutory damages pursuant to 740 ILCS § 14/20(1) of $1,000 for each negligent violation; (iii) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS § 14/20(3).

**COUNT II**
**Violations of the Illinois Biometric Information Privacy Act,**
**740 ILCS 14/15(b)**
**(On behalf of Plaintiff and the Class)**

63.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

64.     Defendants are private entities as defined in 740 ILCS § 14/10.

65.     740 ILCS § 14/15(b) provides that "[n]o private entity may collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier or biometric information, unless it first: (1) informs the subject . . . in writing that a biometric identifier or biometric information is being collected or store; (2) informs the subject . . . in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and (3) receives a written release executed by the subject of the biometric identifier or biometric information . . ."

66.     In violation of 740 ILCS § 14/15(b)(1), Defendants systematically collected, captured, received, or otherwise obtained Plaintiff's and the other Class members' biometric identifiers and biometric information without first informing Plaintiff and the other Class members, or their legally authorized representatives, in writing that their biometric identifiers and biometric information were being collected and stored.

67.     In violation of 740 ILCS § 14/15(b)(2), Defendants systematically collected, captured, received, or otherwise obtained Plaintiff's and the other Class members' biometric identifiers and biometric information without first informing Plaintiff and the other Class members, or their legally authorized representatives, in writing of the specific purpose and length of term for which the biometric identifiers and biometric information was being collected, stored and used.

68.     In violation of 740 ILCS § 14/15(b)(3), Defendants systematically collected, captured, received, or otherwise obtained Plaintiff's and the other Class members' biometric

16

identifiers and biometric information without first obtaining a written release from them or their legally authorized representatives, as required by that provision.

69.  By capturing, collecting, and obtaining Plaintiff and the Class' biometric identifiers and biometric information as described herein, Defendants denied Plaintiff and the Class of their right to statutorily-required information and right to say no, failed to protect their facial biometric data and violated their state rights to biometric privacy as set forth in BIPA.

70.  Each of these privacy violations harmed and injured Plaintiff and the other Class members.

71.  BIPA provides for statutory damages of $5,000 for each willful and/or reckless violation of BIPA and, alternatively, damages of $1,000 for each negligent violation of BIPA.

72.  Defendants' violations of BIPA, as set forth herein, were knowing and willful, or were at least in reckless disregard of the statutory requirements. Alternatively, Defendants negligently failed to comply with BIPA's requirements because they failed meet their applicable standard of care to ensure that such information was collected, stored, and used in compliance with applicable State law.

73.  Accordingly, Plaintiff, on behalf of herself and the proposed Class, seeks: (i) injunctive and equitable relief as provided for in 740 ILCS § 14/20(4) to protect Plaintiff and the Class members' interests by requiring Defendants to comply with BIPA's requirements for collecting, capturing, receiving through trade, or otherwise obtaining biometric identifiers and biometric information and restraining Defendants' continued non-compliance; (ii) statutory damages of $5,000 pursuant to 740 ILCS § 14/20(2) for each intentional and reckless violation of BIPA, or alternatively statutory damages pursuant to 740 ILCS § 14/20(1) of $1000 for each negligent violation; (iii) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS § 14/20(3).

**COUNT III**
**Violations of the Illinois Biometric Information Privacy Act,**
**740 ILCS 14/15(c)**
**(On behalf of Plaintiff and the Class)**

74.　　Plaintiff incorporates the foregoing allegations as if fully set forth herein.

75.　　Defendants are private entities as defined in 740 ILCS § 14/10.

76.　　740 ILCS § 14/15(c) provides that "[n]o private entity in possession of a biometric identifier or biometric information may sell, lease, trade, or otherwise profit from a person's or customer's biometric identifier or biometric information."

77.　　In violation of 740 ILCS § 14/15(c), Defendants sold, traded, or otherwise profited from its possession of Plaintiff and Class members' biometric information and biometric identifiers by commercially disseminating this data for its own benefit and profit.

78.　　Each of these privacy violations harmed and injured Plaintiff and the other Class members.

79.　　BIPA provides for statutory damages of $5,000 for each willful and/or reckless violation of BIPA and, alternatively, damages of $1,000 for each negligent violation of BIPA.

80.　　Defendants' violations of BIPA, as set forth herein, were knowing and willful, or were at least in reckless disregard of the statutory requirements. Alternatively, Defendants negligently failed to comply with BIPA's requirements because they failed meet their applicable standard of care to ensure that such information was collected, stored, and used in compliance with applicable State law.

81.　　Accordingly, Plaintiff, on behalf of herself and the proposed Class, seeks: (i) injunctive and equitable relief as provided for in 740 ILCS § 14/15(c) to protect Plaintiff and the Class members' interests by requiring Defendants to comply with BIPA's requirements for selling, trading, or profiting from biometric identifiers and biometric information and restraining Defendants' continued non-compliance; (ii) statutory damages of $5,000 pursuant to 740 ILCS § 14/20(2) for

18

each intentional and reckless violation of BIPA, or alternatively statutory damages pursuant to 740 ILCS § 14/20(1) of $1000 for each negligent violation; (iii) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS § 14/20(3).

**COUNT IV**
**Violations of the Illinois Biometric Information Privacy Act,**
**740 ILCS 14/15(d)**
**(On behalf of Plaintiff and the Class)**

82.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

83.     Defendants are private entities as defined in 740 ILCS § 14/10.

84.     740 ILCS § 14/15(d) provides in relevant part that "[n]o private entity in possession of a biometric identifier or biometric information may disclose, redisclose, or otherwise disseminate a person's or a customer's biometric identifier or biometric information unless: (1) the subject of the biometric identifier or biometric information . . . consents to the disclosure or redisclosure."

85.     In violation of 740 ILCS § 14/15(d), Defendants, while in possession of Plaintiff and the class members' biometric identifiers and biometric information, disclosed and/or redisclosed and disseminated Plaintiff's and the Class members' biometric information and biometric identifiers without obtaining consent.

86.     These privacy violations harmed and injured Plaintiff and the other Class members.

87.     BIPA provides for statutory damages of $5,000 for each willful and/or reckless violation of BIPA and, alternatively, damages of $1,000 for each negligent violation of BIPA.

88.     Defendants' violations of BIPA, as set forth herein, were knowing and willful, or were at least in reckless disregard of the statutory requirements. Alternatively, Defendants negligently failed to comply with BIPA's requirements because they failed meet their applicable standard of care to ensure that such information was collected, stored, and used in compliance with applicable State law.

89. Accordingly, Plaintiff, on behalf of herself and the proposed Class, seeks: (i) injunctive and equitable relief as provided for in 740 ILCS § 14/15(c) to protect Plaintiff and the Class members' interests by requiring Defendants to comply with BIPA's requirements disclosing, redisclosing, and disseminating, biometric identifiers and biometric information and restraining Defendants' continued non-compliance; (ii) statutory damages of $5,000 pursuant to 740 ILCS § 14/20(2) for each intentional and reckless violation of BIPA, or alternatively statutory damages pursuant to 740 ILCS § 14/20(1) of $1000 for each negligent violation; (iii) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS § 14/20(3).

## COUNT V
## UNJUST ENRICHMENT
### (On behalf of Plaintiff and the Class)

90. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

91. Plaintiff and those similarly situated conferred a tangible economic benefit upon Defendants by providing their biometric identifiers and biometric information as described herein.

92. Defendants appreciated those economic benefits through their sale and trade, or otherwise profited from their possession of Plaintiff and Class members' biometric information and biometric identifiers while exposing Plaintiff and Class members to a heightened risk of privacy and informational harms and depriving them of their control over their biometric data.

93. Defendants have received a financial benefit from the sale, trade, or profiting from Plaintiff and Class members' biometric information and biometric identifiers.

94. Plaintiffs and the Class members did not authorize Defendants to collect, obtain, store, use, possess and profit from their biometric identifiers and information.

95. Defendants have unjustly retained these benefits to Plaintiff and the Class members' detriment.

20

96.     It is against fundamental principles of justice, equity, and good conscience for Defendant to retain these benefits.

97.     The Court should issue a judgment on behalf of Plaintiff and the Class members ordering Defendants to disgorge all of these ill-gotten gains.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of herself and the proposed Class, respectfully requests that this Court enter a Judgment as follows:

a.  Certifying the Class as defined above, appointing Plaintiff as class representative and the undersigned as class counsel;

b.  Declaring that Defendants violated BIPA's requirements, including separate violations of 740 ILCS § 14/15(a), (b)(1), (b)(2), (b)(3), (c), and (d);

c.  Awarding injunctive and equitable relief to protect the interests of Plaintiff and the Class by requiring Defendant to comply with BIPA requirements for the capture, collection, storage, use, and dissemination of biometric identifiers and biometric information, and restraining Defendants' continued non-compliance;

d.  Awarding statutory damages of $1,000 for each negligent violation of BIPA, pursuant to 740 ILCS § 14/20(3);

e.  Awarding statutory damages of $5,000 for each willful and/or reckless violation of BIPA, pursuant to 740 ILCS § 14/20(1);

f.  Ordering Defendants to disgorge all profits or other benefits obtained from its improper collection, use, trade, sale, dissemination and profiting from Plaintiff and the Class members' biometric information and biometric identifiers;

g.  Awarding reasonable attorneys' fees, costs, and other litigation expenses pursuant to 740 ILCS § 14/20(3);

h.   Awarding pre-judgment and post-judgment interest, as allowable by law; and

i.   Awarding such further and other relief as the Court deems just and equitable.

### JURY TRIAL DEMAND

Plaintiff hereby demands a trial by jury of all issues so triable.

Dated: December 7, 2022

Glenn Ruud   ARDC #2428539
Kylie K. Franklin   ARDC #6325625
**Hopkins & Huebner, P.C.**
100 E. Kimberly Road, Suite 400
Davenport, IA 52806
Tel:  563-445-2254
gruud@hhlawpc.com
kfranklin@hhlawpc.com

Grace E. Parasmo (*pro hac vice to be filed*)
Yitzchak H. Lieberman (*pro hac vice to be filed*)
**PARASMO LIEBERMAN LAW**
7119 W. Sunset Blvd, #808
Los Angeles, CA 90046
Tel: (917) 657-6857
gparasmo@parasmoliebermanlaw.com
ylieberman@parasmoliebermanlaw.com

Allen Schwartz (*pro hac vice to be filed*)
**LAW OFFICE OF ALLEN SCHWARTZ, ESQ.**
150 Broadway, Suite 900
New York, NY 10038
Tel:  347-460-5379
Cell: 773-808-8972
allen@allenschwartzlaw.com

*Attorneys for Plaintiff Olena Halim, individually, and
on behalf of all others similarly situated*

FILED DATE: 12/7/2022 3:03 PM    2022CH11832

# EXHIBIT A

*TESS was last updated on Thu Dec 1 03:47:22 EST 2022*

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | BOTTOM | HELP |

Logout  Please logout when you are done to release system resources allocated for you.

# Record 1 out of 1

| TSDR | ASSIGN Status | TTAB Status | *( Use the "Back" button of the Internet Browser to return to TESS)*

# MAKEUP AI

**Word Mark** **MAKEUP AI**

**Goods and Services** IC 009. US 021 023 026 036 038. G & S: computer software for the provision of information and advice relating to cosmetics; facial recognition software; application software used for facial recognition software and information and advice relating to cosmetics; downloadable application software for smart phones for providing information and advice relating to cosmetics; computer game programs; computer programmes, recorded for use in the collection of facial recognition data for cosmetics; computer programs for use in the collection of facial recognition data for cosmetics; computer software, recorded for use in the collection of facial recognition data for cosmetics; downloadable image files featuring cosmetics; downloadable applications software for smart phones for use in the collection of facial recognition data for cosmetics; mobile applications software for use in the collection of facial recognition data for cosmetics; mobile apps for use in the collection of facial recognition data for cosmetics. FIRST USE: 20200500. FIRST USE IN COMMERCE: 20200500

IC 035. US 100 101 102. G & S: Advertising and promotion of cosmetics; retail store services featuring cosmetics; on-line retail store services featuring cosmetics. FIRST USE: 20200500. FIRST USE IN COMMERCE: 20200500

IC 038. US 100 101 104. G & S: Telecommunications, namely, transmission of data by electronic means, namely, via the internet, intranets, extranets, television, mobile communication, cellular and satellite networks; Telecommunications, namely, electronic transmission of streamed and downloadable audio and video files via computer and other communications networks; providing access to online computer databases; transmission of database information via telecommunication networks. FIRST USE: 20200500. FIRST USE IN COMMERCE: 20200500

IC 044. US 100 101. G & S: make-up application services; cosmetic make-up application services; advice and consultancy services relating to the above services. FIRST USE: 20200500. FIRST USE IN COMMERCE: 20200500

**Standard Characters Claimed**

**Mark**

FILED DATE: 12/7/2022 3:03 PM    2022CH11832

| | |
|---|---|
| **Drawing Code** | (4) STANDARD CHARACTER MARK |
| **Serial Number** | 88104155 |
| **Filing Date** | September 4, 2018 |
| **Current Basis** | 1A |
| **Original Filing Basis** | 1B;44D |
| **Date Amended to Current Register** | March 16, 2022 |
| **Owner** | (APPLICANT) Islestarr Holdings Limited public limited company (plc) UNITED KINGDOM Unit 5 50 Brook Green, Hammersmith London UNITED KINGDOM W67BJ |
| **Attorney of Record** | Connie Ellerbach |
| **Disclaimer** | NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "A.I." APART FROM THE MARK AS SHOWN |
| **Type of Mark** | TRADEMARK. SERVICE MARK |
| **Register** | SUPPLEMENTAL |
| **Live/Dead Indicator** | LIVE |

TESS HOME    NEW USER    STRUCTURED    FREE FORM    BROWSE DICT    SEARCH OG    TOP    HELP

| HOME | SITE INDEX| SEARCH | *eBUSINESS* | HELP | PRIVACY POLICY

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
CHANCERY DIVISION

FILED
12/7/2022 3:03 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2022CH11832
Calendar, 12
20587412

OLENA HALIM, individually and on behalf of all
those similarly situated,

    Plaintiff,

v.

CHARLOTTE TILBURY BEAUTY INC.,
ISLESTARR HOLDINGS LTD.

    Defendant.

No. 2022CH11832

**Judge:**

**JURY TRIAL DEMANDED**

## AFFIDAVIT PURSUANT TO ILLINOIS SUPREME COURT RULE 222(b)

Pursuant to Supreme Court Rule 222 (B), counsel for the above-named Plaintiff certifies that

Plaintiff seeks money damages in excess of Fifty Thousand and 00/100 Dollars ($50,000).

Dated: December 7, 2022

Glenn Ruud   ARDC #2428539
**Hopkins & Huebner, P.C.**
100 E. Kimberly Road, Suite 400
Davenport, IA 52806
Tel: 563-445-2254
gruud@hhlawpc.com

Subscribed and sworn to before me

on December 7 , 2022:

Notary Public

KAREN MARIE BALZER
Commission Number 776756
My Commission Expires
7-29-25

1