# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

OLENA HALIM, individually and on behalf of all those similarly situated,

    Plaintiff,

v.

CHARLOTTE TILBURY BEAUTY INC., ISLESTARR HOLDINGS LIMITED

    Defendants.

Case No.: 1:23−cv−00094

**Honorable Lindsay C. Jenkins**

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF REMAND MOTION**

<u>TABLE OF CONTENTS</u>

INTRODUCTION .................................................................................................................. 1

FACTUAL BACKGROUND ................................................................................................ 2

    A.   BIPA's Regulatory Framework ................................................................................ 2

    B.   Plaintiff Alleges Four BIPA Counts ....................................................................... 3

    C.   Defendants' Notice of Removal................................................................................ 4

ARGUMENT ......................................................................................................................... 6

    I.   The Court Should Remand the Entire Case Because Defendants' Damages Estimate is Neither Plausible Nor Adequately Supported By Evidence ........................................ 6

    II.   The Court Lacks Subject Matter Jurisdiction Over The Section 15(a) and Section 15(c) Claims .............................................................................................................................. 8

        A.   Defendants bear the burden to show Article III standing for each claim ................... 8

        B.   Plaintiff lacks Article III standing for her Section 15(a) claim because she only alleges a failure to develop and publish a written policy, not an unlawful retention of data ............................................................................................................................... 9

        C.   Plaintiff lacks Article III standing for her Section 15(c) claim because she alleges a generalized—not a particularized and concrete—harm and only seeks statutory damages............................................................................................................................. 12

CONCLUSION..................................................................................................................... 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bryant v Compass Group USA, Inc.*,
    958 F.3d 617 (7th Cir 2020) ....................................................8, 9, 10, 12

*Carpenter v McDonald's Corp.*,
    No. 21-02906, 2021 WL 6752295 (N.D. Ill. Nov. 1, 2021) ...............................12, 14

*Collier v. SP Plus Corp.*,
    889 F.3d 894 (7th Cir. 2018) (*per curiam*) ............................................8, 13

*Colon v Dynacast, LLC*,
    No. 20-3317, 2021 WL 492870 (N.D. Ill. Feb. 10, 2021) ....................................11

*Dexia Credit Local v Rogan*,
    602 F.3d 879 (7th Cir 2010) ...................................................................6

*Ewing v Med-1 Solutions, LLC*,
    24 F.4th 1146 (7th Cir. 2022) .................................................................9

*Fox v Dakkota Integrated Sys., LLC*,
    980 F.3d 1146 (7th Cir. 2020) .........................................................9, 10, 12

*Gardynski-Leschuck v. Ford Motor Co.*,
    142 F.3d 955 (7th Cir. 1998) .................................................................8

*Harvey v. Resurrection Univ.*,
    No. 21-3203, 2022 WL 3716213 (N.D. Ill. Aug. 29, 2022) ....................................14

*Hazlitt v. Apple Inc.*,
    543 F. Supp. 3d 643 (S.D. Ill. 2021)........................................................14

*Johnson v Mitek Sys.*,
    55 F.4th 1122 (7th Cir. 2022) ...............................................................13

*King v PeopleNet Corp.*,
    No. 21-2774, 2021 WL 5006692 (N.D. Ill. Oct. 28, 2021) .................................10, 13

*Kislov v. Am. Airlines, Inc.*,
    566 F. Supp. 3d 909 (N.D. Ill. 2021) .......................................................11

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 ................................................................................8

*Marquez v. Google LLC*,
  No. 20-cv-4454, 2020 WL 6287408 (N.D. Ill. Oct. 27, 2020) ................................................12

*Michael v. Cenlar FSB*,
  No.16-2010, 2016 WL 4398095 (N.D. Ill. Aug. 17, 2016) ....................................................7

*Patterson v. Respondus, Inc.*,
  593 F. Supp. 3d 783 (N.D. Ill. 2022), reconsideration denied, No. 20-7692,
  2022 WL 7100547 (N.D. Ill. Oct. 11, 2022).................................................................6, 11, 14

*Schaeffer v Amazon.com, Inc.*,
  No. 21-01080, 2022 WL 190641 (S.D. Ill. Jan. 21, 2022) ..............................................10, 13

*Schutte v Ciox Health, LLC*,
  28 F.4th 850 (7th Cir 2022) ....................................................................................................6

*Smith v. Am. Gen. Life & Accident Ins. Co.*,
  337 F.3d 888 (7th Cir. 2003) ...................................................................................................8

*Spokeo, Inc. v Robins*,
  578 U.S. 330 (2016)..................................................................................................................9

*Theriot v. Louis Vuitton N. Am., Inc.*,
  No. 22-2944, 2022 WL 17417261 (S.D.N.Y. Dec. 5, 2022) ............................................10, 11

*Thornley v Clearview AI, Inc.*,
  984 F.3d 1241 (7th Cir. 2021) ...............................................................................8, 12, 13, 14

*Woods v Fleetpride, Inc.*,
  No. 21-01093, 2022 WL 900163 (N.D. Ill. Mar. 27, 2022) ................................................11

**Statutes**

735 ILCS 5/2-603(b)...........................................................................................................................7

740 ILCS 14/10...............................................................................................................................2, 3

740 ILCS 14/15(a) ..........................................................................................................................3, 9

740 ILCS 14/15(b) ..............................................................................................................................3

740 ILCS 14/15(b)(1) .........................................................................................................................6

740 ILCS 14/15(b)(2) .........................................................................................................................6

740 ILCS 14/15(b)(3) .........................................................................................................................6

740 ILCS 14/15(c) ........................................................................................................................3, 12

740 ILCS 14/15(d) .................................................................................................................3

28 U.S.C. § 1332(d)(2) ..........................................................................................................4

28 U.S.C. § 1332(d)(5)(b) ......................................................................................................5

28 U.S.C. § 1441(a) ...............................................................................................................4

BIPA ...............................................................................................................................*passim*

CAFA ..............................................................................................................................*passim*

**INTRODUCTION**

Plaintiff Olena Halim ("Plaintiff") filed this putative class action against Charlotte Tilbury Beauty Inc. and Islestarr Holdings Limited ("Defendants") in Illinois Circuit Court asserting claims under the Illinois Biometric Information Privacy Act, 740 ILCS 14/1, *et seq*., ("BIPA"). Plaintiff's BIPA claims arise out of Defendants' scans of her facial geometry through the "Charlotte's Virtual Try On" tool, which allows consumers who visit Defendants' website to see how cosmetics manufactured and sold by Defendants would look on their faces.

Plaintiff alleges five causes of action in her complaint. ECF 1-1 ¶¶ 56-97. Count I alleges a cause of action under § 15(a) of BIPA for failing to develop a written policy made available to the public that establishes a retention schedule and guidelines for permanently destroying the biometric identifiers. ECF 1-1 ¶¶ 56-62. Count II alleges a cause of action under § 15(d) of BIPA for capturing and collecting her biometric data through the Virtual Try On without first obtaining her informed written consent. ECF 1-1 ¶¶ 63-73. Count III alleges a cause of action under § 15(c) of BIPA for disseminating her data without her consent. ECF 1-1 ¶¶ 74-81. Count IV alleges a cause of action under § 15(d) for profiting from the dissemination of biometric data. ECF 1-1 ¶¶ 82-89. Count V alleges a cause of action for unjust enrichment. ECF 1-1 ¶¶ 90-97.

Defendants removed this case to federal court under the Class Action Fairness Act 2005, 28 U.S.C. §§ 1332(d), 1453 & 1711–1715 ("CAFA"), asserting they meet CAFA's amount in controversy requirement of $5 million. ECF 1 ¶¶ 26-37. Defendants submitted testimony that "at least 100" people used the Virtual Try On in Illinois during the five-year period preceding the lawsuit. ECF 1 ¶ 18; ECF 1-4 ¶ 5. Defendants assumed, without evidence, that each of those individuals used the tool twice, and that Plaintiff was seeking to recover for six BIPA violations even though her complaint has only four counts under BIPA. ECF 1 ¶¶ 30-33. Based upon these

1

assumptions, Defendants provided a calculation that "100 members * 2 scan/member * 6 violations/scan * $5,000/violation = $6 million." ECF 1-1 ¶ 33.

First, Defendants' metric of "6 violations/scan" misreads the complaint. Plaintiff only alleges only four counts under BIPA—and only *one* of them—Count II, arises under § 15(b). ECF 1-1 ¶¶ 63-73. Yet, to arrive at "6 violations/scan," Defendants misconstrued the complaint as interposing three distinct § 15(b) claims. Defendants cannot meet CAFA's jurisdictional minimum for this reason alone.

Second, independent of Defendants' failure to otherwise establish CAFA jurisdiction, the Court lacks Article III subject matter jurisdiction over Plaintiff's § 15(a) and § 15(c) claims because Plaintiff does not allege, let alone purport to allege, a concrete and individualized harm. The Seventh Circuit has held that these claims, as pleaded by Plaintiff here, do not confer Article III standing. And without the improperly removed § 15(a) and § 15(c) claims, Defendants also cannot meet CAFA's jurisdictional minimum.

Accordingly, the Court lacks subject matter jurisdiction over this action and should remand the case to the Circuit Court of Cook County, Illinois.

## FACTUAL BACKGROUND

### A. BIPA's Regulatory Framework

BIPA confers Illinois residents with privacy and consent rights over their biometric identifiers such as "fingerprints, retina or iris scans, voiceprints, or scans of hand or face geometry." 740 ILCS 14/10.

Section 15(a) of BIPA requires that private entities possessing this data develop a publicly available written policy "establishing a retention schedule and guidelines for permanently destroying" this data when "the initial purpose for collecting or obtaining" this data

"has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first." 740 ILCS 14/15(a). Section 15(b) of BIPA requires that private entities capturing, collecting, or obtaining this data first obtain informed written consent. 740 ILCS 14/15(b). The statute requires that a private entity collecting this data must first inform individuals that their biometric data is being collected, (§ 15(b)(1)), inform them of the purpose of the collection and length of time it is being held, (§ 15(b)(2)), and obtain a written release (§ 15(b)(3)). Section 15(c) of BIPA prohibits private entities possessing this data from selling, leasing, trading, or profiting from it. 740 ILCS 14/15(c). Finally, Section 15(d) prohibits private entities possessing this data from disseminating or disclosing it without consent. 740 ILCS 14/15(d). "A prevailing party may recover for each violation" up to $5000 if the violation was intentional or reckless. 740 ILCS 14/10.

**B. Plaintiff Alleges Four BIPA Counts**

Plaintiff, an Illinois resident, alleges that Defendants, through "Charlotte's Virtual Try On," captured and collected a scan of her face geometry when she used the tool on their website, without obtaining her informed written consent. ECF 1.1 ¶ 44-45. Plaintiff alleges that Makeup AI™, which powers the Virtual Try On, is a sophisticated and precise facial recognition technology, and is described by Defendant Islestarr in its trademark application, as "facial recognition software" that is "for use in the collection of facial recognition data for cosmetics." ECF 1-1 ¶ 23. Plaintiff alleges that Makeup AI™ works by extracting and creating a unique digital representation of the face and its measurements (*i.e.,* a face template) based on the scan of the consumer's facial landmarks and facial geometry. ECF 1-1 ¶ 31. The face template is alleged to be necessary for Makeup AI™ to overlay the product on the live image of the consumer's face with precision and exactitude. ECF 1-1 ¶ 31.

Plaintiff alleges that, in violation of § 15(a), "Defendants failed to develop a written policy, made available to the public, that establishes a retention schedule and guidelines for permanently destroying the biometric identifiers and/or biometric information of Plaintiff and Class members." ECF 1-1 ¶¶ 37, 59. In violation of § 15(b), Defendants did not inform her that they were capturing and collecting her biometric data, the purpose and length of time for which they were doing so, and they did not obtain her written consent. ECF 1-1 ¶¶ 32-34, 66-69. In violation of § 15(c), "Defendants . . . commercially benefit from their commercial disclosure and dissemination of Plaintiff and the Class member's protected biometric data because [their] commercial dissemination assists Defendants with business development, data analytics and consumer advertising." ECF 1-1 ¶¶ 43, 77. Finally, in violation of § 15(d), Defendants "commercially disclose, transfer, and disseminate Plaintiff and Class members' biometric identifiers and/or biometric information directly to Defendants' affiliates and third-party partners" without consent. Plaintiff pleaded four counts for Defendants' BIPA violations, and a fifth count for unjust enrichment. ECF 1-1 ¶¶ 38-42, 85, 90-97.

### C. Defendants' Notice of Removal

Plaintiff filed her class action complaint in the Circuit Court of Cook County, Illinois, County Department, Chancery Division on December 7, 2022. ECF 1.1. On January 6, 2023, Defendants removed the case to this Court pursuant to 28 U.S.C. § 1441(a). ECF 1. In the Notice of Removal, Defendants claimed that "[t]he Class Action Fairness Act of 2005, 28 U.S.C. §§ 1332(d), 1453 & 1711–1715 ("CAFA") endows this Court with original jurisdiction over this putative class action." ECF 1 ¶ 11. Under CAFA, the Court has subject matter jurisdiction over any class action "in which the matter in controversy exceeds the sum or value of $5,000,000," 28

U.S.C. § 1332(d)(2), so long as the "number of members of all proposed plaintiffs classes is [not] less than 100." 28 U.S.C. § 1332(d)(5)(b).

In support of removal, Defendants submitted the affidavit of Jonathan Bush, an Islestarr employee, who testified that he "reviewed company records relating to the use of 'Charlotte's Virtual Try on Tool,' and that based on his review "the best present estimate is that at least 100 individuals used 'Charlotte's Virtual Try On tool' within the state of Illinois during the five-year period preceding Plaintiff's claims." ECF 1-4 ¶ 5.

Defendants claimed that Plaintiff asserts six violations of BIPA, construing her complaint as asserting three separate violations of §15(b)—one for each of § 15(b)'s subsections. ECF 1 ¶¶ 30-31. Defendants also asserted that Plaintiff seeks to recover statutory damages for each violation of § 15(b). ECF 1 ¶ 33. And because Plaintiff alleged that she used the tool "on multiple occasions," Defendants further assumed that each class member used the tool at least twice. ECF 1 ¶¶ 32-33. Thus, "[s]ix violations of BIPA per scan with at least two scans for each of at least 100 putative class members and $5,000 per violation, puts the amount in controversy at least $5,000,000 (i.e., 100 members * 2 scan/member * 6 violations/scan * $5,000/violation)." ECF 1 ¶ 33.

Defendants further claimed that Plaintiff's requests for injunctive relief, disgorgement, and attorney's fees should be included in the amount in controversy calculation. ECF 1 ¶ 35.

On March 7, 2023, after Plaintiff stated in her initial status report that this Court lacks subject matter jurisdiction over the case, (ECF 23), the Court directed Plaintiff to file a motion to remand by March 28, 2023, with opposition due by April 11, 2023 and reply by April 18, 2023. ECF 26, 28.

## ARGUMENT

I. **The Court Should Remand the Entire Case Because Defendants' Damages Estimate is Neither Plausible Nor Adequately Supported By Evidence**

Courts "have an independent duty to ensure subject-matter jurisdiction . . ." *Dexia Credit Local v Rogan*, 602 F.3d 879, 883 (7th Cir 2010); *see also Patterson v. Respondus, Inc.,* 593 F. Supp. 3d 783, 800 (N.D. Ill. 2022), reconsideration denied, No. 20-7692, 2022 WL 7100547 (N.D. Ill. Oct. 11, 2022) (addressing subject-matter jurisdiction *sua sponte* in BIPA action based on the court's "independent duty" to ensure jurisdiction and remanding certain claims). "The party asserting federal jurisdiction has the burden of showing that CAFA's requirements are satisfied." *Schutte v Ciox Health, LLC*, 28 F.4th 850, 854 (7th Cir 2022). "Where the amount in controversy is contested, removal is proper if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds the jurisdictional threshold." *Id.* (citations and quotations omitted, cleaned up). The removing party must provide a good faith estimate that is plausible and supported by evidence. *Id.*

Defendants assert they meet CAFA's $5 million threshold through the following calculation: six violations of BIPA per scan with at least two scans for each of at least 100 putative class members and $5,000 per violation, (*i.e.*, 100 members * 2 scan/member * 6 violations/scan * $5,000/violation = $6 million). ECF 1-1 ¶ 33. This calculation relies on the assumptions that (1) there are two scans for each class member and Defendants disseminated and separately profited from each scan; (2) Plaintiff can recover statutory damages for each of Defendants' violations of 740 ILCS 14/15(b)(1), (b)(2), and (b)(3) of BIPA, and (3) there is Article III standing for Plaintiff's § 15 (a) and § 15 (c) claims. ECF 1-1 ¶¶ 30-31.

First, these assumptions are not supported by the evidence or the complaint. Defendants provide no evidence to suggest that every class member used Charlotte's Virtual Try-On at least

twice *and* that Defendant disseminated *and* profited from each of these scans on two occassions. Nor does Plaintiff make such allegations. Even assuming one scan per class member, CAFA's jurisdictional minimum is not satisfied. (*i.e.*, 100 members * 1 scan/member * 6 violations/scan * $5,000/violation = $3 million).

Second, Plaintiff does not allege multiple causes of action under § 15(b). Count II alleges only one § 15(b) cause of action. Under the Illinois Code of Civil Procedure, under which the complaint was filed, "each separate cause of action upon which a separate recovery might be had shall be stated in a separate count . . ." *See* 735 ILCS 5/2-603(b). ECF 1-1 ¶¶ 63-73. Without the unsupported triple counting of § 15(b), Defendants fall short of CAFA's jurisdictional minimum (*i.e.*, 100 members * 2 scan/member * 4 violations/scan * $5,000/violation = $4 million).

Third, as discussed below (section II, *infra*), Plaintiff lacks Article III standing for her § 15(a) and § 15(c) claims. When both of these claims are subtracted from the calculation, Defendants again fall short of the amount in controversy under CAFA. That is, even with three § 15(b) counts, and an assumed 2 scans per member, Defendants do not meet CAFA's amount in controversy requirement without the § 15(a) and § 15(c) claims (*i.e.*, 100 members * 2 scan/member * 4 violations/scan * $5,000/violation = $4 million).

Finally, while it is true that the value of injunctive relief can be included in an amount in controversy calculation, "there is nothing [in the record] which suggests how much [Plaintiffs] would gain and [Defendants] would lose as a result of the requested injunctive relief." *Michael v. Cenlar FSB*, No.16-2010, 2016 WL 4398095, at *3 (N.D. Ill. Aug. 17, 2016). "Similarly, for the disgorgement remedy" there is no "evidence of the amount of [Defendants'] gains or profits . . ." *Id.*

Defendants also do not provide any evidence of the amount for attorney's fees, which can only include fees incurred before the filing of the suit. *Smith v. Am. Gen. Life & Accident Ins. Co.*, 337 F.3d 888, 896-897 (7th Cir. 2003) ("[P]ost-filing attorney's fees cannot count toward the amount in controversy requirement because federal jurisdiction exists, if at all, at the time of filing."); *Gardynski-Leschuck v. Ford Motor Co.*, 142 F.3d 955, 959 (7th Cir. 1998) ("[L]egal expenses that lie in the future and can be avoided by the defendant's prompt satisfaction of the plaintiff's demand are not an amount 'in controversy' when the suit is filed.").

Thus, Defendants have not met their burden to establish that this Court has CAFA jurisdiction. The Court should therefore remand the case to the Circuit Court of Cook County, Illinois.

## II.  The Court Lacks Subject Matter Jurisdiction Over The Section 15(a) and Section 15(c) Claims

### A. Defendants bear the burden to show Article III standing for each claim

The party invoking federal jurisdiction has the burden of establishing Article III standing. *Bryant v Compass Group USA, Inc.*, 958 F.3d 617, 620 (7th Cir 2020) (citing *Collier v. SP Plus Corp.*, 889 F.3d 894, 896 (7th Cir. 2018) (*per curiam*)). The complaint must "clearly allege facts demonstrating each element" of standing. *Thornley v Clearview AI, Inc.*, 984 F.3d 1241, 1246 (7th Cir. 2021) (citations and quotations omitted).

For Plaintiff "to have Article III standing, three requirements must be satisfied: (1) she must have suffered an actual or imminent, concrete and particularized injury-in-fact; (2) there must be a causal connection between her injury and the conduct complained of; and (3) there must be a likelihood that this injury will be redressed by a favorable decision." *Bryant*, 958 F.3d at 620-621 (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61(1992)).

A "particularized injury" means that the injury "must affect the plaintiff in a personal and individual way," (*Spokeo, Inc. v Robins*, 578 U.S. 330, 339 (2016)) (citations and quotations omitted))), and a "concrete injury" requires something more than "a bare procedural violation, divorced from any concrete harm." *Id.* at 341. "Intangible harms" can be "concrete if the plaintiff's alleged injury bears a 'close relationship' to the sort of harms traditionally recognized by American courts, such as reputational harm." *Ewing v Med-1 Solutions, LLC*, 24 F.4th 1146, 1151 (7th Cir. 2022) (citation omitted).

### B. Plaintiff lacks Article III standing for her Section 15(a) claim because she only alleges a failure to develop and publish a written policy, not an unlawful retention of data

Section 15(a) of BIPA mandates that private entities possessing biometric data develop a publicly available written policy "establishing a retention schedule and guidelines for permanently destroying" this data when "the initial purpose for collecting or obtaining" this data "has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first." 740 ILCS 14/15(a).

In *Bryant*, the Seventh Circuit found that the plaintiff did not have Article III standing to bring her § 15(a) claim because "[i]n contrast to the obligations set forth under section 15(b), the duty to disclose under section 15(a) is owed to the public generally, not to particular persons whose biometric information the entity collects." *Bryant,* 958 F.3d at 626. The Seventh Circuit clarified in *Fox v Dakkota Integrated Sys., LLC*, that a plaintiff can have Article III standing to bring a Section 15(a) claim where the plaintiff "alleges a concrete and particularized invasion of her privacy interest in her biometric data stemming from [defendant's] violation of the full panoply of its section 15(a) duties—the duties to develop, publicly disclose, *and comply with* data retention and destruction policies—resulting in the wrongful retention of her biometric

data . . ." *Fox v Dakkota Integrated Sys., LLC*, 980 F.3d 1146, 1149 (7th Cir. 2020) (emphasis in original).

Here, like in *Bryant*, there are no allegations that Defendants unlawfully retained the Plaintiff's data after the initial purpose for collection had ended, or that Defendants had no policy or failed to comply with their policy. Plaintiff's § 15(a) claim is expressly directed only to Defendants' failure to "to develop a written policy made available to the public that establishes a retention schedule and guidelines for permanently destroying the biometric identifiers . . ." ECF 1.1 ¶ 37; *see also id.* ¶ 59 (Defendants violated § 15(a) because they "failed to develop a written policy made available to the public providing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information as required by that provision.").

Where "the allegations . . . are [only] directed to [the] . . . alleged failure to develop and publish data retention and destruction policies," the plaintiff lacks Article III standing. *Theriot v. Louis Vuitton N. Am., Inc.*, No. 22-2944, 2022 WL 17417261, at *3 (S.D.N.Y. Dec. 5, 2022); *See also Schaeffer v Amazon.com, Inc.*, No. 21-01080, 2022 WL 190641, at *2 (S.D. Ill. Jan. 21, 2022) (no standing where plaintiff alleged that defendant "did not develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information."). Further, "general allegations that [defendant] violated [plaintiff's] privacy rights under BIPA, and that she was injured by defendant's conduct, are not allegations that the defendant unlawfully retained her information." *King v PeopleNet Corp.*, No. 21-2774, 2021 WL 5006692, at *3-4 (N.D. Ill. Oct. 28, 2021) (holding that there was no standing where plaintiff alleged defendant "violated its duty to publish a policy, and also that defendant retained her biometric information" but did not allege "that

[defendant's] retention of her data was unlawful."). Even with a conlusorly allegation of unlawful retention, there is still no standing where a plantiff does "not meaningfully allege" the unlawful retention. *Patterson,* 593 F. Supp. 3d at 824.

For purposes of assessing standing, courts look to "the allegations that specifically refer to the Section 15(a) claim." *Woods v Fleetpride, Inc.*, No. 21-01093, 2022 WL 900163, at *5 (N.D. Ill. Mar. 27, 2022). Where those allegations are premised only on the failure to publish a written policy and make "no suggestion that [Defendants] failed to destroy her biometric data in violation of a retention policy" that "makes all the difference" and there is no Article III standing. *Id.* The *Woods* court refused to combine other factual allegations to manufacture an injury in fact where the § 15(a) claim was directed only to a failure to develop and publish a written policy. *Id.* (rejecting argument that the complaint should be construed to allege unlawful retention where the complaint alleged "indefinite storage" and sought injunctive relief because the §15(a) claim was expressly directed only at the failure to publish). Similarly, in *Theriot*, the court refused to find a concrete and particular harm "by implication" based on other allegations and claims in complaint where the §15(a) claim was explicitly directed to the defendant's "alleged failure to develop and publish data retention and destruction policies." 2022 WL 17417261, at *3.

Even when there is ambiguity in the complaint, courts are guided by the type of claim the plaintiffs assert they pleaded. *Colon v Dynacast, LLC*, No. 20-3317, 2021 WL 492870, at *4-5 (N.D. Ill. Feb. 10, 2021) ("[T]his latter reading is confirmed by Plaintiff: in her original and supplemental briefing, she has assured the Court that she bases her section 15(a) claim on only a failure to publicly provide a data policy."); *Kislov v. Am. Airlines, Inc*., 566 F. Supp. 3d 909, 914 (N.D. Ill. 2021) (remanding § 15(a) based on plaintiffs' assertion that they were not pursuing a

claim for unlawful retention) (collecting cases). *Marquez v. Google LLC*, No. 20-cv-4454, 2020 WL 6287408, at *2 (N.D. Ill. Oct. 27, 2020) (same); *Cf. Carpenter v McDonald's Corp.*, No. 21-02906, 2021 WL 6752295, at *3 (N.D. Ill. Nov. 1, 2021) (looking to plaintiff's reading of complaint). As these courts recognize, Plaintiff's interpretation on remand is persuasive, since the complaint must "clearly allege facts demonstrating each element" of standing, (*Thornley*, 984 F.3d at 1246 (citations and quotations omitted)), and the burden is on the party asserting federal jurisdiction. *Bryant*, 958 F.3d at 620.

Plaintiff's § 15(a) claim here is expressly predicated on Defendants' violation of a duty owed to the public at large, i.e., the duty to publish a written retention schedule—not the unlawful retention that the Seventh Circuit in *Fox* found confers a concrete harm and Article III standing. Accordingly, Plaintiff does not have Article III standing for this claim.

## C. Plaintiff lacks Article III standing for her Section 15(c) claim because she alleges a generalized—not a particularized and concrete—harm and only seeks statutory damages

Section 15(c) of BIPA prohibits private entities possessing biometric data from selling, leasing, trading, or profiting from it. 740 ILCS 14/15(c). For Article III standing purposes, § 15(c) of BIPA "is the same kind of general regulation as the duty to create and publish a retention and destruction schedule found in section 15(a) . . . when the plaintiff asserts no particularized injury resulting from the commercial transaction." *Thornley*, 984 F.3d at 1247.

In *Thornley*, the Seventh Circuit found that the plaintiffs did not have Article III standing where they alleged that defendant scraped their photos from social media, extracted their facial geometry, incorporated it into a database, and then sold access to it to "users who wish to find out more about someone in a photograph—perhaps to identify an unknown person, or perhaps to confirm the identity of a person of interest." *Id.* at 1243. The Seventh Circuit recognized that the

plaintiff is "the master of her own complaint." *Id.* at 1246. And though she might have asserted a concrete and particularized injury—for example that she was deprived of the opportunity to profit from her data, or that defendants amplified the initial particular and concrete harms by disseminating the data—the salient fact was that she didn't: "[w]ithout any such allegations of concrete and particularized harm to the plaintiffs, we are left with a general rule that prohibits the operation of a market in biometric identifiers and information." *Id.* at 1247.

Courts analyze standing for each claim independent of the other claims in a complaint. *Johnson v Mitek Sys.*, 55 F.4th 1122, 1124 (7th Cir. 2022) ("Johnson has not alleged a concrete harm and, on [][the Section 15(c)] claim at least, seeks only statutory damages. The district court should not attempt to adjudicate Johnson's claim under § 15(c) but must remand it to state court after resolving all claims within the court's adjudicatory competence."); *see also supra* at 11 (citing cases).

"A broad allegation of injury or a violation of privacy isn't enough under Article III." *King*, 2021 WL 5006692, at *5; *see also Schaeffer*, 2022 WL 190641, at *3 ("While Schaeffer does generally claim that Amazon violated her rights to biometric privacy, nowhere does she allege that Amazon deprived her of an opportunity to profit from her information, sold her data, or that the transmission or dissemination of her biometric information amplified the invasion of her privacy. As a result, her § 15(c) claim does not satisfy the injury-in-fact requirement for Article III standing."). And "[a] mere reference to 'actual damages' in the complaint's prayer for relief does not establish Article III standing." *Collier*, 889 F.3d at 896.

Here, Plaintiff expressly seeks only statutory damages for her § 15(c) claim. ECF 1.1 ¶ 81. She does not allege that she was deprived "of the opportunity to profit from her biometric information" or that "that the act of selling her data amplified the invasion of her privacy that

13

occurred when the data was first collected, by disseminating it to some unspecified number of other people." *Thornley*, 984 F.3d at 1247. Rather, she merely alleges that Defendants "commercially benefited" from the dissemination of the data "because this commercial dissemination assists Defendants with business development, data analytics and consumer advertising." ECF 1.1 ¶ 43. Plaintiff's § 15(c) claim is expressly for statutory damages predicated only on the commercial benefit Defendants obtained, not on any concrete and particular harm done to her from these "commercial benefits." ECF 1.1 ¶¶ 43, 84. "Plaintiff ultimately alleges a general regulatory violation and nothing close to the type of personal, individual harm that the *Thornley* court observed might confer Article III standing." *Carpenter*, 2021 WL 6752295, at *4; *see also Hazlitt v. Apple Inc.*, 543 F. Supp. 3d 643, 652 (S.D. Ill. 2021) (remanding § 15(c) claim where plaintiffs alleged "nothing more than a regulatory violation"); *Patterson*, 593 F. Supp. 3d at 825 (remanding § 15(c) claim for lack of standing where plaintiff failed to allege how "she was personally affected by [defendant's] alleged profiting from her biometric data"); *Harvey v. Resurrection Univ.*, No. 21-3203, 2022 WL 3716213, at *2 (N.D. Ill. Aug. 29, 2022) (same).

## CONCLUSION

For these reasons, the Court should remand the entire case to the Circuit Court of Cook County. If the Court finds that the CAFA amount in controversy is met, the Court should still remand the § 15(a) and § 15(c) claims for lack of Article III standing.

Dated: March 28, 2023

Respectfully submitted,

/s/ Grace E. Parasmo
Grace E. Parasmo (*pro hac vice*)
Yitzchak H. Lieberman (*pro hac vice*)
**Parasmo Lieberman Law**
7119 W. Sunset Blvd, #808
Los Angeles, CA 90046
Tel: (646) 509-3913

14

gparasmo@parasmoliebermanlaw.com
ylieberman@parasmoliebermanlaw.com

Allen Schwartz (*pro hac vice*)
**Schwartz Law PLLC**
150 Broadway, Suite 900
New York, NY 10038
Tel:  347-460-5379
Cell: 773-808-8972
allen@allenschwartzlaw.com

Kylie K. Franklin
**Hopkins & Huebner, P.C.**
100 E. Kimberly Road, Suite 400
Davenport, IA 52806
Tel:  563-445-2254
kfranklin@hhlawpc.com

Robert R Duncan
James Henry Podolny
**Duncan Law Group, LLC**
161 N. Clark, Suite 2550
Chicago, IL 60601
(312) 202-3283
rrd@duncanlawgroup.com
jp@duncanlawgroup.com

*Attorneys for Plaintiff Olena Halim,
individually, and on behalf of all others
similarly situated*