IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| OLENA HALIM, individually and on behalf of all those similarly situated,<br>Plaintiff,<br><br>v.<br><br>CHARLOTTE TILBURY BEAUTY INC., ISLESTARR HOLDINGS LIMITED<br>Defendants. | Case No.: 1:23-cv-00094<br><br>Honorable Lindsay C. Jenkins |

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO REMAND**

**I.    INTRODUCTION**

Plaintiff controls the allegations contained within the four corners of her Complaint, and she is justly bound by those allegations. Defendants Charlotte Tilbury Beauty Inc. ("CTBI") and Islestarr Holdings Limited ("Islestarr") (collectively, "Defendants") timely removed Plaintiff Olena Halim's ("Plaintiff") putative class-action complaint to federal court under the Class Action Fairness Act ("CAFA"). Now, nearly three months later, Plaintiff contests removal under CAFA and Article III, arguing that the Court should reconstrue the plain language of her pleading to divest itself of jurisdiction. None of her arguments have merit. Defendants respectfully request that the Court deny Plaintiff's motion to remand, as both CAFA and Article III requirements are satisfied based upon the plain language of Plaintiff's otherwise baseless allegations.[1]

---

[1] Defendants cite to Plaintiff's allegations in this submission solely for purposes of establishing this Court's jurisdiction over the action under CAFA. Defendants deny (1) Plaintiff's allegations, (2) that a putative class is properly defined, and (3) that this action is proper for class treatment. Defendants will address these issues at an appropriate stage in the litigation.

- 2 -

## II. RELEVANT BACKGROUND

On December 7, 2022, Plaintiff filed a class-action Complaint (the "Complaint") against Defendants CTBI and Islestarr in the Circuit Court of Cook County, Illinois. Dkt. 1-1. Plaintiff filed suit on behalf of herself and a putative class comprised of allegedly similarly situated individuals. *Id.* ¶ 48. Plaintiff alleges that Defendants offer "virtual try-ons" of cosmetic products using "a sophisticated and precise facial recognition technology." *Id*. ¶ 23. According to the Complaint, as part of the "Charlotte's Virtual Try On" tool offered to consumers, "Defendants use the consumer's camera to take a live scan of [the consumer's] face." *Id.* ¶ 28. Plaintiff further alleges that this tool "works by extracting and creating a unique digital representation of the face and its measurements (*i.e.*, a face template) based on the scan of the consumer's facial landmarks and facial geometry." *Id.* ¶ 31.

Plaintiff alleges that "[o]n multiple occasions beginning in or about December 2020 and continuing through October 2022," she used the "Charlotte's Virtual Try On" tool. *Id.* ¶ 44. Plaintiff further alleges that to proceed with the tool, "Defendants required Plaintiff to turn on and use her live camera in Illinois at which point the technology used her live camera to scan, collect, capture, obtain, use, and store digital copies of Plaintiff's unique facial geometry scan." *Id.* ¶ 45. Plaintiff asserts that, among other things, Defendants "did not inform Plaintiff in writing" regarding the capture of biometric identifiers, "did not seek . . . written consent" prior to the capture of biometric identifies, and "did not publish any policy as to a biometric retention schedule" in violation of the Illinois Biometric Information Privacy Act ("BIPA"). *Id.* ¶¶ 46–47.

Plaintiff asserts six violations of BIPA against each Defendant, alleging that both CTBI and Islestarr violated subsections 740 ILCS 14/15(a), 15(b)(1), 15(b)(2), 15(b)(3), 15(c), and 15(d). Dkt. 1-1 ¶¶ 59, 66–68, 77, 85. Plaintiff also brings a claim against each Defendant for unjust enrichment. *Id.* ¶¶ 90–97. Plaintiff seeks identical damages from each Defendant, including

"statutory damages of $5,000 for each willful and/or reckless violation of BIPA," and "statutory damages of $1,000 for each negligent violation of BIPA," as well as equitable and injunctive relief, disgorgement, reasonable attorneys' fees, and costs. *Id.* at Prayer for Relief c-g.

Defendants timely removed this action to federal court on January 6, 2023, on the basis that federal subject matter jurisdiction was appropriate under CAFA, 28 U.S.C. §§ 1332(d)(2), 1453, 1711–15. Dkt. 1. In support of removal, and for purposes of establishing this Court's jurisdiction under CAFA, Defendants submitted the declaration of Jonathan Bush, which established that "***at least*** 100 individuals used 'Charlotte's Virtual Try-On' tool within the state of Illinois during the five-year period preceding plaintiff's claims." Dkt. 1-4, ¶ 5 (emphasis supplied). Plaintiff filed a Motion to Remand on March 28, 2023. Dkt. 29 (the "Motion").

### III. ARGUMENT

#### A. There is Article III Standing Over Plaintiff's BIPA Section 15(a) and 15(c) Claims.

Plaintiff does not dispute, and therefore concedes, that there is Article III standing as to her Section 15(b) and 15(d) BIPA claims, as well as her unjust enrichment claim. *See generally* Dkt. 29; *Bryant v. Compass Grp. USA, Inc.*, 958 F.3d 617, 626 (7th Cir. 2020) (standing for Section 15(b); *Cothron v. White Castle Sys., Inc.*, 20 F.4th 1156, 1161 (7th Cir. 2021) (standing for Section 15(d)). The Court's inquiry is therefore whether Article III is satisfied for purposes of Plaintiff's Section 15(a) and 15(c) BIPA claims. Precedent from courts within the Seventh Circuit make clear that there is Article III standing for these claims, and nothing raised in Plaintiff's Motion dispels this conclusion.

### 1. Article III Standing Depends On An Assessment of the Totality Of Plaintiff's Allegations In The Complaint.

Article III standing contains three requirements: (**1**) a plaintiff must have suffered an actual or imminent, concrete, and particularized injury-in-fact; (**2**) there must be a causal connection between her injury and the conduct complained of; and (**3**) there must be a likelihood that this injury will be redressed by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). "At the pleading stage, the standing inquiry asks whether the complaint 'clearly . . . allege[s] facts demonstrating each element' in the doctrinal test." *Larkin v. Fin. Sys. of Green Bay, Inc.*, 982 F.3d 1060, 1064 (7th Cir. 2020) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)). A court's job is to determine whether plaintiffs "have Article III standing to pursue the case ***they have presented in their complaint***." *Thornley v. Clearview AI, Inc.*, 984 F.3d 1241, 1248 (7th Cir. 2021) (emphasis supplied). Mischaracterizing case law from this Circuit, Plaintiff proposes that the Court follow a different path and assess her claims in isolation. Dkt. 29 at 16, 18. Because Plaintiff's approach is meritless the Court should reject it. *See Thornley*, 984 F.3d at 1248.

Plaintiff first argues that courts assessing standing "look to 'the allegations that specifically refer to the [given] claim.'" Dkt. 29 at 16 (citing *Woods v. FleetPride, Inc.*, No. 1:21-CV-01093, 2022 WL 900163, at *5 (N.D. Ill. Mar. 27, 2022)). Plaintiff's reliance on *Woods* is misplaced, as the court ***first*** assessed the entirety of the pleadings, ***then*** evaluated arguments directed at "allegations that specifically refer" to a given claim. *Id*. at *1-2, 5. Nor does *Johnson* support Plaintiff's position. Dkt. 29 at 18 (citing *Johnson v. Mitek*, 55 F.4th 1122, 1124 (7th Cir. 2022)). There, the Seventh Circuit held merely that the plaintiff asserting a Section 15(c) claim "has not alleged a concrete harm and, on this claim at least, seeks only statutory damages". 55 F.4th at 1224. *Johnson* is entirely silent as to what the Seventh Circuit reviewed to arrive at this conclusion. The other case law Plaintiff relies upon fares no better, as in all instances the courts were "satisfied

by considering only the complaint". *Colon v. Dynacast, LLC*, No. 1:20-cv-03317, 2021 WL 492870, at *4 (N.D. Ill. Feb. 10, 2021) (concerning Section 15(a) claims and others under BIPA); *see also Kislov v. Am. Airlines*, 566 F. Supp. 3d 909, 910, 914 (N.D. Ill. 2021) (accepting "the allegations in the [complaint] as true" and finding a lack of standing based on "Plaintiff's allegations" for claims arising under Section 15(a) and others under BIPA); *accord Marquez v. Google LLC*, No. 1:20-cv-04454, 2020 WL 6287408, at *2 (N.D. Ill. Oct. 27, 2020) *and Carpenter v. McDonald's Corp.*, No. 1:21-cv-02906, 2021 WL 6752295, at *3 (N.D. Ill. Nov. 1, 2021).

For these reasons, this Court should assess the entirety of the allegations set forth in the Complaint—rather than applying Plaintiff's unsupported siloed approach—to determine whether there is Article III standing for Plaintiff's Section 15(a) and (c) claims. *Larkin*, 982 F.3d at 1064; *Thornley*, 984 F.3d at 1248.

### 2. Plaintiff's Complaint Establishes An Injury-In-Fact Under BIPA Section 15(a).

Section 15(a) of BIPA requires that "[a] private entity in possession of biometric identifiers or biometric information must develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first." 740 ILCS 14/15(a). The Seventh Circuit has held that an alleged "mere procedural failure to publicly disclose a data-retention policy" does not give rise to standing, but alleged violations of "***the full panoply of [a defendant's] section 15(a) duties . . . suffice[] to plead an injury in fact for purposes of Article III***." *Fox v. Dakkota Integrated Sys., LLC*, 980 F.3d 1146, 1148–49 (7th Cir. 2020) (emphasis supplied). Following *Fox*, courts have found that: **(i)** the failure to develop a policy and **(ii)** the unlawful retention of biometric information each constitute an

- 5 -

independent injury-in-fact for purposes of BIPA Section 15(a). Both of these violations are alleged in the Complaint, providing two self-supporting grounds for Article III standing in this case.

### a. Plaintiff Alleges Defendants Fail to Develop A Retention Policy, Which Suffices For Purposes Of Article III Standing.

"[A]n allegation that [a defendant] has failed to comply with the Act's requirement that a collector of biometric information ***develop a retention policy*** . . . satisfies the injury in fact needed for Article III standing." *Marsh v. CSL Plasma Inc.*, 503 F. Supp. 3d 677, 682-83 (N.D. Ill. 2020) (citation omitted and emphasis supplied); *see also Roberson v. Maestro Consulting Servs. LLC*, 507 F. Supp. 3d 998, 1008 (S.D. Ill. 2020) (finding standing for claim alleging solely a failure to establish a policy under Section 15(a)); *Patel v. Facebook, Inc.*, 932 F.3d 1264, 1268 (9th Cir. 2019) (finding standing for failure to maintain a policy under Section 15(a)) (cited approvingly in *Fox*, 980 F.3d at 1153). Plaintiff makes these precise assertions, alleging that Defendants "failed to develop and publish policies for the retention and permanent destruction of Plaintiff and Class Members' biometric data." Dkt. 1-1 at 10 (decapitalized); *see also id.* ¶¶ 37, 59. Based on these allegations alone, Plaintiff has alleged an injury-in-fact for her Section 15(a) claim.

### b. Standing Is Also Independently Established by Plaintiff's Allegation That Defendants Unlawfully Retained Her Biometric Information.

Plaintiff likewise alleges that Defendants "capture, collect, use, and store" her and the putative class's biometric data, which independently satisfies Article III for purposes of her BIPA Section 15(a) claim. Dkt. 1-1 at 7, ¶¶ 22–35, 38–43, 82–89. Under *Fox*, "[c]ollection or retention without a policy is a particularized harm to a plaintiff" sufficient to give rise to Article III standing for a BIPA Section 15(a) claim. *King v. PeopleNet Corp.*, No. 1:21-cv-02774, 2021 WL 5006692, at *3 n.3 (N.D. Ill. Oct. 28, 2021) (citing *Fox*, 980 F.3d at 1155); *see also Neals v. ParTech, Inc.*, No. 1:19-cv-05660, 2021 WL 463100, at *4–5 (N.D. Ill. Feb. 9, 2021) (same); *Wordlaw v. Enter.*

*Leasing Co. of Chicago, LLC,* No. 1:20-cv-03200, 2020 WL 7490414, at *4 (N.D. Ill. Dec. 21, 2020) (same). Moreover, courts have held that BIPA plaintiffs cannot avoid standing merely by using "synonyms for retention." *Jones v. IAS Logistics DFW, LLC*, No. 19-cv-02510, 2021 WL 7627509, at *1 (N.D. Ill. Feb. 1, 2021) (holding that allegations of "storage" were synonymous with "retention" and gave rise to standing). As such, Plaintiff's allegations that Defendants retained biometric data, regardless of phrasing, constitute an injury-in-fact. Plaintiff argues in cursory fashion that her Complaint contains "no allegations that Defendant unlawfully retained the Plaintiff's data after the initial purpose for collection had ended, or that Defendants had no policy or failed to comply with their policy." Dkt. 29 at 15. Yet Plaintiff's Complaint contains these exact allegations, as shown above, and in any event, it is well-established in the Seventh Circuit that a plaintiff's briefing "cannot contradict" the pleadings. *Atlas IP, LLC v. Exelon Corp.*, 189 F. Supp. 3d 768, 779 (N.D. Ill. 2016) (citation omitted).

The case law Plaintiff relies upon is also unavailing. She first references a non-precedential, unpublished case from the New York, *Theriot v. Louis Vuitton N. Am., Inc.*, which contradicts case law from this Circuit and limits Section 15(a) standing to unlawful retention (and would still suffice to confer standing here). *Theriot*, No. 1:22-cv-02944, 2022 WL 17417261, at *3 (S.D.N.Y. Dec. 5, 2022). Plaintiff also cites *Schaeffer v. Amazon.com, Inc.*, in which the plaintiff's complaint expressly "state[d] that she did not suffer an injury" for Section 15(a), which is not an allegation raised in Plaintiff's Complaint. *Schaeffer*, No. 3:21-cv-01080, 2022 WL 190641, at *1, *2 (S.D. Ill. Jan. 21, 2022). In sum, Plaintiff has alleged two independent injuries-in-fact sufficient to establish standing for her Section 15(a) claim and her Motion contradicting these allegations should be denied. *See Fox*, 980 F.3d at 1148–49; *Marsh*, 503 F. Supp. 3d at 682–83; *King*, 2021 WL 5006692, at *3 n.3.

### 3. Plaintiff's Complaint Also Establishes An Injury-In-Fact Under BIPA Section 15(c).

Section 15(c) of BIPA provides that a private entity may not "sell, lease, trade, or otherwise profit from" an individual's biometric data. 740 ILCS 14/15(c). Plaintiff's Complaint plainly alleges that Defendants engaged in this course of conduct in support of both her Section 15(c) and unjust enrichment claims. *Compare* Dkt. 1-1 ¶ 77 *with id*. ¶ 92 (alleging identical sale, trade, and profit of biometric information). Section 15(c) of BIPA provides that a private entity may not "sell, lease, trade, or otherwise profit from" an individual's biometric data. 740 ILCS 14/15(c). Plaintiff alleges that Defendants engaged in this course of conduct in support of both her Section 15(c) and unjust enrichment claims. *Compare* Dkt. 1-1 ¶ 77 *with id*. ¶ 92 (alleging identical sale, trade, and profit of biometric information). Plaintiff does not dispute that she has alleged a concrete injury-in-fact arising from this conduct for her unjust enrichment claim, but nevertheless asks the Court to disregard this injury **with respect to her Section 15(c) claim**. *See generally* Dkt. 29 at 17–19. Plaintiff's request is wholly unsupported, and should be rejected by the Court.

Indeed, Plaintiff's Section 15(c) and unjust enrichment claims each rely on the same alleged conduct: Defendants having "sold, traded, or otherwise profited from [their] possession of Plaintiff and Class members' biometric information and biometric identifiers[.]" *Id*. at ¶¶ 77, 92. Plaintiff likewise alleges that she and the class were concretely and individually harmed by this conduct, in that they were "expos[ed] . . . to a heightened risk of privacy and informational harms" and that they were "depriv[ed] . . . of control over their biometric data[.]" *Id*. ¶ 92. As a threshold matter, Defendants are unaware of any authority that would permit a plaintiff to embrace an injury-in-fact allegedly arising from the same set of facts for one claim but reject it for another.

Regardless, even if there were such authority, a plaintiff may allege an injury-in-fact for the purposes of a Section 15(c) claim in a variety of ways, and Plaintiff has done so here. ***First***,

allegations that a defendant "obtained, accessed, and used the biometrics [in its possession] and profited from that conduct" constitute a concrete injury-in-fact for a BIPA Section 15(c) claim. *In re Clearview AI, Inc., Consumer Priv. Litig.*, No. 1:21-cv-00135, 2022 WL 252702, at *3 (N.D. Ill. Jan. 27, 2022); *see* Dkt. 1-1 ¶ 45 (alleging that Defendants "obtain" and "use" her biometric data); ¶¶ 77, 80, 92, 94 (alleging that Defendants "collected," "used," and "profited from" her and the class's biometric data). ***Second***, consistent with Seventh Circuit precedent, an alleged deprivation of an individual's control over biometric data also constitutes an injury-in-fact for a Section 15(c) claim. *Thornley*, 984 F.3d at 1247; *Warmack-Stillwell v. Christian Dior, Inc.*, No. 1:22-cv-04633, 2023 WL 1928109, at *3 (N.D. Ill. Feb. 10, 2023); *see* Dkt. 1-1 ¶ 92 (alleging that Defendants "depriv[ed]" Plaintiff and the class "of their control over their biometric data"). And ***third***, an allegation that the sale and dissemination of an individual's data has "amplified the invasion of [plaintiff's] privacy that occurred when the data was first collected" additionally constitutes an injury-in-fact for a Section 15(c) claim. *Thornley*, 984 F.3d at 1247; *see* Dkt. 1-1 ¶ 92 (alleging that Plaintiff and the class were "expos[ed] . . . to a heightened risk of privacy and informational harms"). Therefore, Plaintiff has alleged three separate injuries-in-fact for her BIPA Section 15(c) claim, each of which independently suffices for purposes of Article III standing.

In her effort to avoid the Complaint's allegations, Plaintiff cites two cases involving complaints that "nowhere allege[d] that [a defendant] sold her data or that the transmission or dissemination of her biometric information amplified the violation of her privacy." *King*, 2021 WL 5006692, at *4; *Schaeffer*, 2022 WL 190641, at *3 (same). This precedent plainly has no relevance here. Plaintiff also misguidedly relies on other decisions in which courts reviewed the entirety of the subject complaints and found no allegations resembling the ones presented in Plaintiff's Complaint. *Carpenter*, 2021 WL 6752295, at *5 (reviewing entire complaint and finding no

- 9 -

allegations conferring standing for 15(c) claim); *Hazlitt v. Apple Inc.*, 543 F. Supp. 3d 643, 651 (S.D. Ill. 2021) (same); *Harvey v. Resurrection Univ.*, No. 1:21-cv-03203, 2022 WL 3716213, at *2 (N.D. Ill. Aug. 29, 2022) (same); *accord Warmack-Stillwell*, 2023 WL 1928109, at *3 (differentiating that plaintiff's allegations from *Carpenter* and *Hazlitt* and finding standing in light of allegations similar to Plaintiff's). Accordingly, these cases likewise offer no support for Plaintiff's position.

To put it simply, Plaintiff's Complaint asserts two claims arising from the same course of conduct and alleges that Plaintiff and putative class members were concretely, personally, and individually harmed in a manner that applies equally to both claims. *See* Compl. ¶¶ 74-81; 90-97. Plaintiff cannot selectively avoid this Court's jurisdiction by claiming that her harm as pled applies to one claim, but not the other. To hold otherwise would permit Plaintiff to avoid the jurisdictional effect of her allegations, in contravention of precedent from this Circuit. *See, e.g.*, *Atlas IP, LLC*, 189 F. Supp. 3d at 779.

### B. CAFA's $5 Million Threshold Is Satisfied In This Case And Plaintiff Cannot Show Otherwise To A Legal Certainty.

Because Plaintiff in this case does not (and cannot) establish that her claims against Defendants fall below CAFA's $5 million amount in controversy threshold "to a 'legal certainty,'" Plaintiff's Motion fails. *See Sabrina Roppo v. Travelers Com. Ins. Co.*, 869 F.3d 568, 579 (7th Cir. 2017) (quoting *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 541 (7th Cir. 2006)). "CAFA expands jurisdiction for diversity class actions by creating federal subject matter jurisdiction if: **(1)** a class has 100 or more class members; **(2)** at least one class member is diverse from at least one defendant ("minimal diversity"); and **(3)** there is more than $5 million, exclusive of interest and costs, in controversy in the aggregate." *Sabrina Roppo*, 869 F.3d at 578 (citing 28 U.S.C. § 1332(d)). Plaintiff does not dispute (and therefore concedes) that **(1)** and **(2)** are satisfied in this

case, challenging this Court's subject matter jurisdiction solely in relation to CAFA's $5 million amount in controversy requirement. *See generally* Dkt. 29 at 11.

Consistent with precedent from the U.S. Supreme Court and the Seventh Circuit, "a defendant seeking to remove to federal court must file in the district court a notice of removal "containing a short and plain statement of the grounds for removal." *Sabrina Roppo*, 869 F.3d at 578. This is a "liberal" standard congruent with the "'short and plain statement' standard from [Federal] Rule of Civil Procedure] Rule 8(a).'" *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S.Ct. 547, 553 (2014). As Plaintiff acknowledges, *see* Dkt. 29 at 11, when a plaintiff challenges the defendant's amount in controversy allegation, the removing defendant "only must establish the amount in controversy by a good faith estimate that is plausible and adequately supported by the evidence." *Sabrina Roppo*, 869 F.3d 568 at 579 (quotation omitted) (affirming denial of plaintiff's motion to remand). "Remand is appropriate ***only if the plaintiff can establish the claim is for less than the requisite amount to a 'legal certainty***.'" *Id.* (quoting *Meridian*, 441 F.3d at 542) (emphasis supplied). CAFA "abrogates the [traditional] rule against aggregating claims." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 571 (2005); *see also* 28 U.S.C. §§ 1332(d)(2), 1332(d)(6) (expressly providing for claim aggregation for purposes of CAFA).

In support of its Notice of Removal, Defendants submitted the declaration of Jonathan Bush, which established that "at least 100 individuals used 'Charlotte's Virtual Try-On' tool within the state of Illinois during the five-year period preceding plaintiff's claims." Dkt. 1-4 at ¶ 5. Under a straightforward application of claim aggregation principles, the amount in controversy in this case far exceeds the statute's $5 million threshold. This is because Plaintiff demands damages in the amount of at least $6 million (100 members x 6 alleged violations of BIPA x 2 scans/member x $5,000/violation), and seeks those damages from each Defendant, putting the minimum total

amount in controversy for this case at $12 million. *See* Dkt. 1 at ¶¶ 29–33; 44 (alleging scans on "multiple occasions").

Nothing raised in Plaintiff's Motion disturbs this conclusion. ***First***, Plaintiff misstates the legal standard governing Plaintiff's Motion. The question before this Court is not whether Defendants have "provided [] evidence to suggest that every class member used Charlotte's Virtual Try-On at least twice and that Defendant disseminated and profited from each of these scans on two [*sic*] occasions." Dkt. 29 at 11-12. Rather, the questions are whether two-scans-per-class member is "plausible and adequately supported by the evidence" and whether ***Plaintiff*** has established to a ***legal certainty*** that class members did not use the VTO tool at least twice. *See Sabrina Roppo*, 869 F.3d at 579; *see also Spivey v. Vertrue, Inc.*, 528 F.3d 982, 986 (7th Cir. 2008) ("Once the proponent of federal jurisdiction has explained plausibly how the stakes exceed $5 million, then the case belongs in federal court unless it is legally impossible for the plaintiff to recover that much").

In making a good faith estimate, a proponent of federal jurisdiction has "several ways" to meet its burden, including "by calculation from the complaint's allegations." *Sabrina Roppo*, 869 F.3d at 579 (citing *Meridian Sec. Ins. Co.*, 441 F.3d at 541). Where a named plaintiff for a putative class action estimates her individual damages in the complaint, a removing defendant may use that figure as an estimate for determining the amount in controversy for the rest of the class. *See Schutte v. Ciox Health, LLC*, 574 F. Supp. 3d 618, 622 (E.D. Wis. 2021), *aff'd*, 28 F.4th 850, 857 (7th Cir. 2022) (defendants could use complaint's allegations of amount she was impermissibly charged to estimate average charges for rest of class). It then falls on the plaintiff to prove such a recovery is "legally impossible." 28 F.4th at 857. Here, Plaintiff alleged that she used "Charlotte's Virtual Try

On" tool on "multiple occasions." Dkt. 1-1 ¶ 44.[2] Plaintiff's allegation of "multiple occasions" is plausible evidence of two uses of the tool per class member. Plaintiff has not shown it is legally impossible for class members to use the tool multiple times (as she alleged she did) or that it is legally impossible to recover $5,000 *per use* of the VTO tool. *See Peatry v. Bimbo Bakers USA, Inc.*, 393 F. Supp. 3d 766, 769–70 (holding that per-use damages under BIPA are plausible for purposes of CAFA amount-in-controversy). In any event, a plaintiff's "post-removal attempt to cabin her damages so as to avoid federal court does not deprive the Court of jurisdiction." *Id.*

***Second***, notwithstanding Plaintiff's assertion of "unsupported triple counting of § 15(b)," Dkt. 29 at 12, the Complaint alleges three 15(b) violations: Sections 15(b)(1), 15(b)(2), and 15(b)(3), each of which count towards CAFA's amount in controversy. *See* Dkt. 1-1 ¶¶ 32–34, 63 (alleging for Plaintiff's Section 15(b) claim that "Plaintiff incorporates the foregoing allegations as if fully set forth herein"), 66–68 (separately alleging that Defendants violated each of the three subsections of Section 15(b)). It is irrelevant that Plaintiff included these violations within one count of the Complaint. *Id.*

Plaintiff relies upon Illinois Code of Civil Procedure 735 ILCS 5/2-603(b) to argue that she has not alleged multiple BIPA violations. However, "[this] argument is without merit as section 2-603 does not apply in federal court." *Delgado v. United States*, No. 16-cv-01899, 2016 WL

---

[2] Plaintiff's assertion in the Motion that "Plaintiff [does not] make such allegations" is again contrary to the Complaint, where Plaintiff alleged that she used the VTO tool multiple times and that she is similarly situated to other individuals in the proposed class. *See* Dkt. 1-1 ¶ 48. If Plaintiff concedes she is atypical of the class because the number of times she used the VTO tool, her concession precludes class certification. *See Oshana v. Coca-Cola Co.*, 472 F.3d 506, 514 (7th Cir. 2006) (affirming order denying class certification for atypicality of lead plaintiff).

- 13 -

7324590, at *6 (N.D. Ill. Dec. 16, 2016). Indeed, case law cited in Plaintiff's Motion confirms that it is the number of alleged BIPA *violations* that is dispositive for purposes of calculating the amount in controversy under CAFA, rather than the manner in which the violations are listed in a complaint. *See, e.g.*, *Carpenter*, 2021 WL 6752295, at *2–3 (cited at Dkt. 29 at 17) (describing plaintiff as "bring[ing] claims under all four subsections" of BIPA notwithstanding fact that the complaint asserted a single count under BIPA); *Colon*, 2021 WL 492870, at *2 (cited at Dkt. 29 at 16) (finding CAFA's amount in controversy satisfied because Plaintiff's single-count complaint alleged four distinct violations of BIPA and therefore the amount in controversy per putative class member was $20,000); *see also Burlinski v. Top Golf USA Inc.*, No. 19-cv-06700, 2020 WL 5253150, at *3 (N.D. Ill. Sept. 3, 2020) (declining to remand case where for, purposes of amount in controversy under CAFA, court counted "three Section 15(b) violations," even though the complaint raised a single count under BIPA Section 15(b)).

***Third***, for reasons set forth at *supra* pp. 4-10, Plaintiff has Article III standing to assert her claims under Sections 15(a) and 15(c) and those claims should be included in the calculation of the amount in controversy with the other BIPA claims.[3]

For all of these reasons, Plaintiff's claims against Defendants meet CAFA's $5 million amount in controversy requirement.

---

[3] Defendants dispute Plaintiff's conclusion that the value of the injunctive relief and disgorgement she seeks in her Complaint are not included in the amount-in-controversy calculation. *See* Dkt. 29 at 12. Because the amount in controversy is at least $12 million for Plaintiff's other claims in the Complaint, Defendants do not address this argument further.

## IV. CONCLUSION

For the reasons set forth, and in the interests of justice, Defendants respectfully request that the Court deny Plaintiff's Motion as CAFA's $5 million amount in controversy is satisfied. Further, because there is Article III standing for all of Plaintiff's claims as alleged in the Complaint, this Court should likewise deny Plaintiff's request to remand her Section 15(a) and Section 15(c) claims to the Circuit Court of Cook County.

Dated: April 11, 2023    */s/ Kristin L. Bryan*

| | |
|---|---|
| Jack Carriglio | Kristin L. Bryan (*pro hac vice*) |
| Corey T. Hickman | James M. Brennan (*pro hac vice*) |
| COZEN O'CONNOR | SQUIRE PATTON BOGGS (US) LLP |
| 123 N Upper Wacker Drive, Suite 1800 | 1000 Key Tower |
| Chicago, IL 60606 | 127 Public Square |
| Tel.: (312) 474-4477 | Cleveland, OH 44114 |
| Fax: (312) 706-9704 | Tel.: (216) 479-8500 |
| Email: jcarriglio@cozen.com | Fax: (216) 479-8780 |
| Email: chickman@cozen.com | Email: kristin.bryan@squirepb.com |
| | Email: james.brennan@squirepb.com |

Jesse Taylor (*pro hac vice*)
SQUIRE PATTON BOGGS (US) LLP
2000 Huntington Center
41 South High Street
Columbus, OH 43215
Tel.: (614) 365-2700
Fax: (614) 365-2499
Email: jesse.taylor@squirepb.com

*Attorneys for Defendants Charlotte Tilbury Beauty Inc. and Islestarr Holdings Limited*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies in accordance with LR5.5 that a true and correct copy of the foregoing document was served via email on the following counsel of record on April 11, 2023:

Grace E. Parasmo
Yitzchak H. Lieberman
PARASMO LIEBERMAN LAW
7119 W. Sunset Blvd, #808
Los Angeles, CA 90046
Tel: (646) 509-3913
gparasmo@parasmoliebermanlaw.com
ylieberman@parasmoliebermanlaw.com

Allen Schwartz
LAW OFFICE OF ALLEN SCHWARTZ, ESQ.
150 Broadway, Suite 900
New York, NY 10038
Tel: 347-460-5379
Cell: 773-808-8972
allen@allenschwartzlaw.com

Kylie K. Franklin
HOPKINS & HUEBNER, P.C.
100 E. Kimberly Road, Suite 400
Davenport, IA 52806
Tel: 563-445-2254
kfranklin@hhlawpc.com

Robert R Duncan
James Henry Podolny
DUNCAN LAW GROUP, LLC
161 N. Clark, Suite 2550
Chicago, IL 60601
Tel: (313) 202-3283
rrd@duncanlawgroup.com
jp@duncanlawgroup.com

*/s/ Kristin L. Bryan*

*Attorney for Defendants Charlotte Tilbury Beauty Inc. and Islestarr Holdings Limited*